LINDSAY, Judge.
The defendant, Johnnie Carprue, Jr., appeals his conviction of armed robbery, LSA-R.S. 14:64. The trial court sentenced the defendant to serve 25 years at hard labor without benefit of parole, probation, or suspension of sentence. Finding no merit to defendant’s assignments of error, we affirm.
FACTS
At approximately 12:00 p.m. on October 11, 1982 the defendant entered the Executive Lounge in Monroe shortly after the lounge was opened by an employee, Betty Banks. Ms. Banks testified that after unlocking the door and entering the lounge, the defendant also entered, pointed a gun at her and demanded the bag of money which the lounge owner had placed in the lounge earlier that morning. Ms. Banks located the money bag and gave it to the defendant. Ms. Banks was also forced by the defendant to give him all the money in her purse. Before the defendant fled, he fired one shot from his gun into the floor.
Joe Cascio and Thomas Coates were driving near the Executive Lounge when they saw a man running with his hands in his pockets. Considering this to be unusual, they followed the man and saw him run into a nearby apartment. They then returned to the Executive Lounge where they found police officers. The men informed the police officers of the description of the man they saw fleeing the area. Having determined that the description given by the two men matched the description given by Ms. Banks, an officer and Coates returned to the apartment. Patsy Cooper *604 answered the door to the apartment and informed the officers that the defendant had been in the apartment that morning but was no longer there. The officers were given consent to search the apartment but the defendant was not found.
Several days after the robbery, Betty Banks identified the defendant from a photographic lineup. On October 18, 1982 a warrant was issued for the defendant’s arrest for the armed robbery of Betty Banks at the Executive Lounge in Monroe, Louisiana. The defendant was convicted of this armed robbery following a trial by jury which was held on April 11 through 13, 1984. On appeal, the defendant cited the following assignments of error:
1. The trial court erred in not granting defendant’s motion for a new trial.
2. The trial court erred in bringing this matter to trial eleven months after the defendant waived extradition from the State of Wisconsin.
3. The trial court erred in bringing this matter to trial ten months after defendant filed a motion for a speedy trial.
4. The trial court erred in imposing a sentence which is excessive, as a matter of law, and which was imposed without appropriate consideration of the sentencing guidelines of LSA-C.Cr.P Art. 894.1.
ASSIGNMENT OP ERROR # 1
By this assignment, the defendant contends that the trial court erred in denying his motion for new trial, contending that there was insufficient evidence to support a conviction. Specifically, the defendant contends that there was insufficient evidence that he was the person who committed the robbery and that not all elements of the armed robbery were proved.
It is well-settled that in reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under that standard, the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime, including the identity of the defendant, had been proved beyond a reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984); State v. Chism, 436 So.2d 464 (La.1983); State v. Smith, 441 So.2d 739 (La.1983).
The defendant contends that there was a total lack of evidence to prove that he committed the crime for which he was charged.
At the trial, Betty Banks was the State’s primary witness on the question of identity. She testified there was a window in the lounge near the bar and at the time of the robbery there was sufficient light to allow her to clearly see her assailant. In that context, Ms. Banks specifically identified the defendant at the trial as the man who perpetrated the robbery. Additionally, Ms. Banks had identified the defendant from a photographic lineup only a few days after the robbery.
There were some discrepancies in Ms. Banks' testimony as to when she actually made her first identification. Nevertheless, she clearly testified that she did identify the defendant from a photographic lineup, and this was confirmed by a police witness. Ms. Banks also made an in-court identification of the defendant during the trial. Further, the defendant fit the general description of the person seen by Mr. Cascio and Mr. Coates running along the street near the lounge and entering the apartment building near the scene of the robbery. The defendant was identified by other witnesses as a tenant in that apartment building.
Next, the defendant contends that there was insufficient evidence that an armed robbery actually took place. Specifically, defendant contends that because no gun or bullet was introduced into evidence there was no evidence that the defendant was “armed.”
However, Betty Banks testified that the defendant entered the lounge pointing a small handgun. Additionally, Ms. Banks *605 testified that as the defendant left the lounge, he fired a shot into the floor. Officer Smith of the Monroe Police Department testified that he recovered a spent .22 caliber slug from the area where Ms. Banks told him the robber had fired the pistol. Although the bullet was not introduced, there was no evidence contradicting Ms. Banks’ testimony that the defendant had a gun.
After reviewing the evidence in the light most favorable to the prosecution, we find that there was sufficient evidence for a rational trier of fact to conclude that the State had proven the defendant’s guilt beyond a reasonable doubt. It is apparent that the jury chose to believe the testimony of Betty Banks. The testimony of Ms. Banks is clear in her identification of the defendant and the facts as related by Ms. Banks are supported by other witnesses. Therefore, this assignment of error is without merit.
ASSIGNMENT OF ERROR # 2
In brief, the defendant has specifically abandoned this assignment of error.
ASSIGNMENT OF ERROR # 3
By this assignment, the defendant contends that the trial court erred in failing to grant his motion to quash the bill of information on the basis that the defendant was denied his right to a speedy trial.
On May 5, 1983 the State of Louisiana filed a detainer against the defendant who was then in prison in the State of Wisconsin serving a two year sentence for armed robbery. On April 21, 1983 defendant’s counsel wrote a letter to the Fourth Judicial District Court requesting a speedy trial on the charges against him and informed the court that the defendant would waive extradition. An assistant district attorney replied to the defendant’s letter that the State did not intend to seek the return of the defendant until he had completed serving his two year sentence in Wisconsin. On June 20, 1983 the defendant filed a motion for speedy trial in the District Court. On July 6, 1983 the District Court ordered that a copy of the defendant’s motion be forwarded to the office of the District Attorney. The State filed an answer to the defendant’s motion; however, no action was taken by the District Court. On October 12, 1983 the defendant filed a motion for dismissal of information and withdrawal of detainer. On November 3, 1983 the District Court denied defendant’s motion to dismiss the charges. However, the District Court ordered the State of Louisiana to make a diligent, good faith effort to bring the defendant to this state for trial. On December 21, 1983 the defendant again filed a motion for dismissal and withdrawal of the detainer. The State filed an answer stating that extradition was begun on November 21, 1983 and on December 22, 1983 requisition papers were sent to the governor of the State of Wisconsin. On January 11, 1984 the District Court found that the State had complied with its order and denied defendant’s motion for dismissal. On March 12, 1984 the State of Louisiana filed a bill of information against the defendant charging him with armed robbery.
The defendant filed a motion to quash contending that he had been denied his constitutional and statutory right to a speedy trial. The District Court denied defendant’s motion. Trial was had on the armed robbery charge on April 11, 12, and 13, 1984.
The defendant contends that he has been denied his constitutional right to a speedy trial under Article 1, Section 16 of the Louisiana Constitution of 1974 and the 6th Amendment to the United States Constitution. Additionally, the defendant contends that the state failed to comply with LSA-C. Cr.P. Art. 701 by failing to bring the defendant to trial within 120 days of the date the detainer was filed in the State of Wisconsin.
The State contends that it had six years in which to institute prosecution of the defendant under LSA-C.Cr.P. Art. 572, and once the prosecution was instituted the State had two years to commence trial under LSA-C.Cr.P. Art. 578. The State contends that it complied with both Article 572 and 578 by instituting prosecution approxi *606 mately two years after the commission of the crime and bringing the defendant to trial approximately one month after the prosecution was instituted by bill of information. Additionally, the State contends that the defendant’s constitutional right to a speedy trial was not denied because the length of delay did not prejudice defendant’s right to a fair trial.
Under LSA-C.Cr.P. Art. 701(D)(1), after the filing of a motion for speedy trial, trial of a defendant charged with a felony shall commence within 120 days if he is continued in custody and within 180 days if he is not continued in custody.
In this case, the defendant was not charged by a bill of information until approximately one month before the trial. The record does not indicate when the defendant was in the custody of officials in the State of Louisiana. The record does reflect; however, that the defendant was in the custody of the State of Wisconsin at least until January of 1984.
Under LSA-C.Cr.P. Art. 701(D) the defendant must either be formally charged with a crime in this state or be in the custody of this state when the delays for the commencement of the trial begin to run. The record reflects that the defendant was formally charged by bill of information on March 12, 1984 and the trial began on April 11, 1984. Additionally, there is no showing that the defendant was in custody in this state in excess of 120 days before trial. Therefore, the defendant’s contention that the State failed to comply with Article 701 is not supported by the record.
Further, it is clear that the prosecution of the defendant was instituted within the applicable statute of limitations of LSA-C. Cr.P. Art. 572. Therefore, the defendant has not made an adequate showing of a denial of his statutory right to a speedy trial under Art. 701 or a violation of the statute, of limitations under Art. 572.
The question remains whether the defendant was denied his constitutional right to a speedy trial under the provisions of the Sixth Amendment of the United States Constitution and Article I Section 16 of the Louisiana Constitution. The primary contention raised by the defendant is that the delay which occurred between his demand for trial while in prison in the State of Wisconsin and the point in time he was returned to the State of Louisiana and actually brought to trial denied him his constitutional right to a speedy trial.
The Louisiana Supreme Court has stated that four factors must be considered in determining whether a defendant has been deprived of his right to a speedy trial: (1) length of delay, (2) the reason for the delay, (3) the defendant’s assertion of his right, and (4) prejudice to the defendant. State v. Dewey, 408 So.2d 1255 (1982), citing Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 83 L.Ed.2d 101 (1972).
Under Barker v. Wingo, supra, the court must first examine the length of the delay and the reasons for the delay. Prior to the trial court’s order of November 3, 1983, the state made no effort to bring the defendant to trial, even though the defendant had made a demand for a speedy trial. The defendant first made his demand for a speedy trial in April of 1983. However, the State sought to delay extradition of the defendant while he served the sentence which was imposed upon him in the State of Wisconsin.
The State may not fail to institute prosecution of a defendant and fail to bring the defendant to trial on the sole basis that the defendant is in the custody of another jurisdiction. The United States Supreme Court has determined that a State has a constitutional duty to make a diligent and good faith effort to bring a defendant to trial once he has made a demand to be brought to trial and waived extradition. Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970); Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). As the United States Supreme Court stated in Dickey v. Florida, supra, “although a great many accused *607 persons seek to put off the confrontation as long as possible, the right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial. This is brought sharply into focus when, as here, the accused presses for an early confrontation with his accuser and with the State.”
The State clearly had a constitutional duty to make a diligent good faith effort to extradite the defendant to this state for trial once the defendant made his demand. The trial court’s order in November of 1983 correctly directed the State to bring the defendant to trial.
The State has presented no justifiable reasons for the delay between the defendant’s demand and the time the State finally sought extradition of the defendant. Therefore, it is clear that the State failed to make a diligent good faith effort to bring defendant to this state for trial. However, the failure of the State to comply with its constitutional duty as clearly outlined in Smith v. Hooey, supra, does not require reversal unless the defendant has shown actual prejudice to his fundamental right to a fair trial. Barker v. Wingo, supra.
Although a delay occurred between the time of the defendant’s initial request for a speedy trial and his return to this state, that delay was not so significant as to deny the defendant his right to a speedy trial, particularly when defendant has shown no actual prejudice to his fundamental right to a fair trial.
Defense counsel contends that a defense alibi witness had died in May of 1983. However, defendant offered no evidence that this witness ever existed or had any knowledge of the defendant or of any facts relative to this crime. Assuming the defendant’s alibi witness did exist, the defendant made his demand for a speedy trial one month before the witness’s death. Even if the State acted more quickly, it is unlikely that the trial could have commenced before the witness’ death.
The defendant failed to make a showing of prejudice denying his basic due process right to a speedy and fair trial. Therefore, this assignment of error is without merit.
ASSIGNMENT OF ERROR # 4
By this assignment, the defendant contends that the trial court imposed an excessive sentence. He also alleges that the trial court did not adequately consider the sentencing guidelines LSA-C.Cr.P. Art. 894.1. The trial court sentenced the defendant to serve 25 years at hard labor without benefit of parol,, probation, or suspension of sentence. Under LSA-R.S. 14:64, whoever commits the .crime of armed robbery shall be imprisoned at hard labor for not less than five years and for not more than 99 years, without benefit of parole, probation or suspension of sentence.
It is well-settled that the sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing judge. State v. Square, 433 So.2d 104 (La.1983); State v. Brooks, 431 So.2d 865 (La.App. 2d Cir.1983).
The sentencing guidelines of LSA-C.Cr.P. Art. 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983). While the trial judge need not articulate every aggravating and mitigating circumstance outlined in Article 894.1, the record should reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983).
A sentence is constitutionally excessive in violation of Article 1, Section 20 of the Louisiana Constitution of 1974 if the sentence is grossly out of proportion to the severity of the offense, or nothing more than a needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980).
The defendant contends the trial court failed to adequately consider the considera *608 tions enumerated in LSA-C.Cr.P. Art. 894.-1. The defendant contends that the trial court failed to consider that he denied committing the robbery and he alleges that there was no positive identification that he was the offender. The defendant also contends that the sentence is excessive as a matter of law considering the nature of the evidence against him in the present case.
At the sentencing hearing, the trial court reviewed the defendant’s presentence investigation report. According to the pre-sentence investigation report, the defendant was born in Monroe, Louisiana and is now 27 years of age. The defendant is not married but has seven children, completed the 11th grade, obtained a GED equivalent high school diploma and has been employed as a construction worker.
The defendant’s record of prior offenses is extensive. The defendant was sentenced to the Indiana State Prison for 10 years on charges of robbery and auto banditry. He was released from the Indiana Prison in 1980 and was again arrested for armed robbery in 1981 in the State of Wisconsin. While the defendant was free on bond, he committed the present offense of armed robbery in this state on October 11, 1982. The defendant was subsequently tried in the State of Wisconsin and sentenced to serve two years in the Department of Corrections in Wisconsin.
The trial court noted that the defendant was not eligible for probation. The court found that the defendant’s conduct did threaten serious injury. The court could find no provocation for the defendant’s actions. The court noted the defendant’s significant criminal record and stated that the defendant’s criminal conduct is likely to recur again.
The record of the sentencing hearing clearly reflects that the trial court complied with the guidelines set forth in LSA-C.Cr.P. Art. 894.1. The defendant’s contention that a lack of evidence mitigated in his favor is without merit. The evidence presented by the State clearly established beyond a reasonable doubt that the defendant committed the armed robbery at the Executive Lounge in Monroe on October 11, 1982. The sentence imposed is not out of proportion to the severity of the offense nor is it a purposeless and needless imposition of pain and suffering. The considerations articulated by the court are amply supported by the record and justify the sentence imposed. Therefore, this assignment of error is without merit.
DECREE
Having found no merit to defendant’s assignments of error, the conviction and sentence are affirmed.
AFFIRMED.